[No. 6,287.—In Bank.]
November 28, 1882.

## SANTA CRUZ RAILROAD CO. *v.* BOARD OF SUPERVISORS OF THE COUNTY OF SANTA CRUZ.

COUNTY BOND—MANDAMUS—NEGOTIABLE INSTRUMENT—STATUTE—BOARD OF SUPERVISORS—CONTRACT.

APPEAL by defendant from the judgment of the District Court of the Twentieth Judicial District in and for the County of Santa Cruz, and from an order denying a motion for a new trial. BELDEN, J.

Application for a writ of mandate. The Court below found the following facts: 1. On or about the eighteenth of June, 1873, the plaintiff duly incorporated under the laws of the State of California for the construction of a railroad, from a point upon the "Southern Pacific Railroad," in the County of Monterey, and extending in a westerly direction across Santa Cruz County to a point called "New Year's Ranch," upon the western boundary of Santa Cruz County. 2. Upon the twenty-fifth day of September, 1872, in pursuance of an Act of the Legislature of the State of California, approved "April 4, 1870," the Board of Supervisors of Santa Cruz County submitted to a vote of the electors of said county, the question of granting the aid of said county in the form of bonds to the amount of six thousand dollars per mile, to aid in the construction of said road. Said order was by the Board of Supervisors regularly made and entered upon their minutes, and after a proper petition requesting said submission had been filed with said Board. 3. That upon the fifth day of November, 1872, after due and regular notice, by publication as by law required, the electors of Santa Cruz County voted upon said proposition, and there was then cast in favor of granting said proposed aid nine hundred and twenty-seven votes, and against granting such aid five hundred and sixty-four votes, and thereafter and in due time and form said "Board of Supervisors" canvassed said vote so cast and returned, and did enter upon their minutes that the vote was as above set forth, and that the proposition to grant said aid,

as in said proposition submitted, had carried at said election. 4. That in pursuance of said election and vote and order thereupon as above set forth, the defendant did, upon August 4, 1873, make and execute upon behalf of the County of Santa Cruz the contract in writing set forth in plaintiff's complaint, and which is as follows:

"This contract, made and entered into on the fourth day of August, A. D. 1873, by and between the County of Santa Cruz, in the State of California, acting by and through the Board of Supervisors of said county, as the party of the first part, and that certain corporation, organized, acting, and existing under and by virtue of the laws of said State, and known, designated, and called the Santa Cruz Railroad Company, as the party of the second part,

"Witnesseth, that the Board of Supervisors of said county, having by an order duly made on September 25, 1872, and recorded at large in volume 3, pages 236–8 of the minutes of the proceedings of said Board, proposed that said county shall aid in the construction of a railroad of not less than a three-foot gauge, the route of which road is definitely described in said proceedings, as beginning at or near the Pajaro Depot on the Southern Pacific Railroad, and thence running in the most practicably direct route through the Counties of Monterey and Santa Cruz, crossing the Pajaro River near Watsonville, and crossing the San Lorenzo River between the county road leading to Soquel and the Bay of Monterey, and thence along or near the coast to the boundary of said county near the south-east corner of the point New Year's Rancho, by the issue of county bonds, payable within twenty years, and bearing interest payable semi-annually at the rate of seven per cent. per annum, to the amount of six thousand dollars per mile, but not exceeding in the aggregate the sum of two hundred and forty thousand dollars: such aid to be in lieu of the aid of one hundred thousand dollars heretofore authorized to be granted in the construction of a railroad connecting the town of Santa Cruz with the Southern Pacific Railroad: And the Board of Supervisors of said county, under and in pursuance of an Act of the Legislature of said State, approved April 4, 1870, and entitled "An Act to empower the Board of Supervisors of the several counties of the State to aid in the con-

struction of a railroad in their respective counties," and of the Act of April 4, A. D. 1870, supplemental thereto, having at the election held in said county on the fifth day of November, A. D. 1872, of which election at least thirty days' notice was given by publication once a week in a newspaper printed and published in said county, which notice stated the day on which, and the places where such election was to be held in said county, and the amount of bonds of said county to be issued for railroad aid, and definitely described the route of the railroad for which aid was proposed, submitted to the qualified electors of said county the question whether such railroad aid shall be granted by said county to aid in the construction of a railroad on the route hereinbefore described; and at such election a majority of the electors voting at such election, having cast their votes in favor of such railroad aid, and the result of said election after a full and fair canvass by said Board, having been declared by said Board to be in favor of granting such railroad aid, and the sum of two hundred and forty thousand dollars, authorized by the said vote as aforesaid to be granted in and to such railroad, being less than five per cent. of the value of the taxable property of said county, and no aid whatever to any railroad having ever been granted by said county: And a certain agreement dated January 18, A. D. 1872, between said county and the Board of Supervisors thereof, and the Santa Cruz and Watsonville Railroad Company, having been fully and forever canceled and annulled, and said county released and discharged from all liability thereunder, and covenants therein: And the said party of the second part having been heretofore duly organized as a corporation under the laws of said state for constructing and maintaining a railroad on the entire route first hereinbefore mentioned and described, and proposing to construct on said route, first, the section of such railroad between a point at or near said Pajaro Depot, and a point on the westerly side of said San Lorenzo River, and within the corporate limits of the Town of Santa Cruz, which point last referred to is hereafter to be located by said party of the second part; and said party of the second part having solicited the said Board to grant the aid of said county in the construction of

such railroad, and the terms offered by said party of the second part appearing to said Board to be advantageous to said county, and it appearing that said county will be greatly benefited by the construction of such railroad, or any part thereof: Now, therefore, this contract witnesseth, that in consideration of the premises, and of the agreements herein named, to be done and performed by said party of the second part, the said party of the first part has agreed and hereby does agree with said party of the second part, to issue, deliver, and donate unto said party of the second part, in aid of the construction of such railroads, bonds of the said County of Santa Cruz, in amounts, and at the times, and upon the terms as herein stated, said bonds as herein provided shall be payable in gold coin to said party of the second part, or to the holders of such bonds, within twenty years from the date of their issue, at the office of the Treasurer of said county, and shall bear interest in like coin at the rate of seven per cent. per annum: and the installments of interest shall be payable semi-annually on the first Mondays of January and July of each year, on coupons to be issued and delivered with such bonds, and each of such bonds shall be of the denomination of not less than one hundred dollars, nor more than one thousand dollars, signed by the chairman of said Board, and by the Treasurer and Clerk of said county, and under the seal of said county; the interest coupons to be signed by the Treasurer and Clerk of said county: such bonds are to be prepared for signing in the following form, to wit:

"Number —.   State of California.   —— Dollars.   Bond of the County of Santa Cruz.

"In pursuance of an Act of the Legislature of the State of California, entitled 'An Act to empower the Board of Supervisors of the several counties of the State, to aid in the construction of a railroad in their respective counties, approved April 4, 1870,' and of an Act supplementary thereto, approved April 4, 1870, and in accordance with the terms of a contract entered into by the Board of Supervisors of said county, on the fourth day of August, 1873, with the Santa Cruz Railroad Company, which said contract is entered upon the minutes of the Board of Supervisors, in Vol. 3, pp. 279–286: The county of Santa Cruz owes and will pay at the office of the County

Treasurer, in the town of Santa Cruz, State of California, to the Santa Cruz Railroad Company, or the holder of this bond, within twenty years from the date of these presents, the sum of        dollars, in United States gold coin, with interest thereon at the rate of seven per cent. per annum, in like gold coin, from the date hereof, until paid, interest payable semi-annually, on the first Mondays of January and July of each year, on the surrender to said County Treasurer of the coupon for said interest. In testimony whereof, and by virtue of the authority upon them conferred by the Board of Supervisors of said county, the chairman of the Board of Supervisors of said county, the County Treasurer, and the County Clerk have hereunto set their hands, and caused the seal of the county to be affixed, this        day of        A. D. one thousand eight hundred and seventy        Chairman Board of Supervisors.        County Clerk.        County Treasurer. Coupon No. On the first Monday of        A. D.        the County of Santa Cruz will pay to the Santa Cruz Railroad Company, or bearer, at the County Treasurer's office, dollars in United States gold coin, interest due on bond No. County Clerk.        County Treasurer.

"Said bonds, with their respective coupons, shall be issued and delivered as follows, to wit: When five miles of said first section of said railroad shall have been constructed, and a construction train run over the same, there shall be issued and delivered to said party of the second part, by said party of the first part, bonds of said county, as aforesaid, to the amount of thirty thousand dollars, and upon the construction of every mile of track thereafter, of such railroad, and the passage of a construction train over the same, there shall be issued and delivered as last aforesaid, to said party of the second part, bonds of said county to the amount of six thousand dollars, and so on until the construction of said railroad is completed. When said party of the second part shall have constructed the first five miles of said railroad as herein designated, a written notice to that effect, signed by the President, Secretary, or Chief Engineer of said party of the second part, shall be delivered to the County Clerk of said county, and within fifteen days after the delivery of such notice to such Clerk, the said Board of Supervisors shall in-

spect, or cause to be inspected, the said five miles of such road, and if found constructed in accordance with this contract, said Board shall issue and deliver to the said party of the second part the bonds of said county, as aforesaid, to the amount of thirty thousand dollars, and thereafter as each mile of said railroad is constructed as stipulated, a similar notice to that effect shall be delivered to said clerk, and thereafter within fifteen days, said Board shall inspect, or cause to be inspected, such mile of the road so constructed, and if found constructed in accordance with this contract, said Board shall issue and deliver to said party of the second part the bonds of said county as aforesaid to the amount of six thousand dollars. And in case said Board, after inspection as aforesaid, shall determine that the part of the road so inspected has not been constructed according to this contract, said Board shall, within fifteen days after such notice shall have been delivered to said Clerk, cause a written notice, signed by the chairman of said Board, or by said County Clerk, stating the objections of said Board to the materials used in said railroad, or to the style of the work, or to the defects in its construction, or other objections, to be delivered to the President, Secretary, or Chief Engineer of said party of the second part, or left at its office; and in default thereof, said bonds shall be issued; but after the ninety thousand dollars of said bonds, with their coupons, shall have been delivered to the said party of the second part, no other or further bond or bonds shall be issued or delivered to the said party of the second part, until a railroad bridge shall have been built, constructed, and finished over and across the said San Lorenzo River, on the line of said railroad, between the county road leading to Soquel and the Bay of Monterey, and the track of such railroad shall have been constructed, and the rails laid to within three hundred feet of the Bay of Monterey, on the westerly side of the river last named. And the said party of the second part has agreed, and hereby does agree to and with the said party of the first part, to build, construct, and furnish such last named bridge, and to lay the track of said railroad from the easterly bank of said last named river, to a point on the westerly side thereof, within three hundred feet of said bay, in three months after said bonds of said county, to the amount of ninety

thousand dollars shall have been issued and delivered to said party of the second part. And if on the completion of the laying of the track of said first section of said railroad, there shall be in the whole distance thereof a fractional part of a mile, said Board of Supervisors shall issue and deliver to said party of the second part, such bonds of said county therefor, at the rate of six thousand dollars per mile. The aid of said county is granted to said party of the second part upon the following conditions, to wit: 1. Work upon the construction of said railroad must commence within three months from the date of this contract, and must thenceforth be prosecuted to the completion of said first section of said railroad, with all the reasonable diligence permitted by the means at the disposal of the said party of the second part. 2. The construction of the road-bed of said railroad may be commenced or prosecuted or carried on at any part of the route of said railroad, but the laying of the rails must commence on the eastern bank of said San Lorenzo River, or within one hundred yards thereof, and thence be continued on the said route of said railroad towards the said Pajaro Depot. 3. The said railroad shall be of not less than a three-feet gauge, the rails used shall be of iron, and weigh on an average not less than thirty pounds to the yard, but no rail used shall weigh less than twenty-five pounds to the yard; the railroad ties shall be of redwood; the rail joints shall be united by fish-plates; the grades adopted shall be practical for the economical transportation of heavy freight; the bridges and trestles shall be substantially built, and of approved style, and the whole work shall be first-class. 4. The said railroad, when the first section shall have been constructed, must be equipped with passenger and freight cars and locomotives, sufficient to accommodate the travel and trade, and the rolling stock thereof shall be an average of that used on other railroads in the United States of the same gauge, and the road-bed shall be well ballasted. 5. The westerly terminus of said first section of said railroad shall be at such point on the western side of said San Lorenzo River and within the corporate limits of the said town of Santa Cruz, as shall hereafter be selected by said party of the second part. 6. Said Board of Supervisors shall not grant the aid authorized to be granted as aforesaid as to

any part of such railroad between said town of Santa Cruz and said Pajaro Depot, which shall not have been completed and in full operation on or before the thirty-first day of December, A. D. 1875, and no bond shall be issued for such uncompleted portion thereof. In witness whereof, the said party of the first part has caused this contract to be executed for and on behalf thereof, by the members of its Board of Supervisors, to wit, Bernard Peyton, P. F. Dean, and Frank P. Porter, and its seal to be hereto affixed; and the said party of the second part has duly authorized and directed its President, F. A. Hihn, and its Secretary, J. N. Besse, for and on its behalf, to execute this contract."

5. That thereafter said plaintiff proceeded to construct said road in accordance with the terms and provisions of said contract. That said plaintiff began the construction of said road at a point on the east bank of the San Lorenzo River, and from then thereafter prosecuted said work with all reasonable dispatch, until the completion of the same, from the Town of Santa Cruz to the required junction with the "Southern Pacific Railroad." That while said road was in process of construction, and about the time that the first five-mile section was completed, and said plaintiff under the provisions of said contract should have been entitled to receive, upon said first section, thirty thousand dollars of the bonds of said county, two suits were brought by two several taxpayers of Santa Cruz County against said Board of Supervisors, to enjoin the payment and delivery of such bonds, and a regular order was made and served upon said Board on or about the ninth of December, 1874, enjoining and restraining said Board of Supervisors from delivering said bonds to said plaintiff, and upon appeal taken from said order to the Supreme Court of the State of California, said injunction order was affirmed and the same remained in full force, restraining the delivery of said bonds or any portion of the same, until the        day of February, 1876, when said injunction was dissolved and said bonds to the amount of thirty thousand dollars were delivered by said county to this plaintiff. That said injunction was procured and maintained against the wish and will and earnest effort of both said plaintiff and also of said Board of

Supervisors, and that said Board of Supervisors employed counsel to procure the dissolution of the same.

6. That upon account of said injunction and the failure of plaintiff to receive said bonds, the plaintiff was greatly hindered and delayed in the construction of the said road, and was unable to procure money or credit to the extent that was required for the most expeditious prosecution of said work; and when said injunction was removed and said bonds were delivered to plaintiff, it did proceed to prosecute, and did complete said work within the points above designated, to wit, Santa Cruz Town and the Southern Pacific Railroad, with all reasonable and proper diligence and dispatch.

7. That after the fixing of the line of this road, and the execution of the centract as above set forth, and after a portion of said road near the town of Watsonville had been constructed and the rails laid, the Legislature of the State of California did authorize and empower said Board of Supervisors to so modify and change said route of said road, and also the contract of said plaintiff with the County of Santa Cruz, as to permit the former to so change the original route of said road, that the same might be constructed through the Town of Watsonville.

8. That thereafter and after the passage of said Act of the Legislature, said parties, the railroad company, upon the one hand, and the Board of Supervisors acting upon behalf of said Santa Cruz County upon the other, did so modify and change said contract that the line of said road was changed to, and did pass through the Town of Watsonville. The order of said Board authorizing and permitting said change, was made by said Board upon the seventeenth of April, 1876. That in said Act of the Legislature it was provided that no additional liability against said county should be created by reason of said change, and such alteration of said route. That thereafter and in pursuance of the several Acts and orders permitting such change, the plaintiff took up one mile and 570-1000 of one mile of track then laid, upon so much road then finished, and relaid the same upon the route through the Town of Watsonville. The line of said road as changed to pass through the Town of Watsonville is three fourths of a mile ($\frac{3}{4}$) longer than the line as originally pro-

jected, and before said track was taken up. Upon the seventeenth of August, 1876, the portion of said road extending from the town of Santa Cruz to the Southern Pacific Railroad was completed and in actual operation. The road so constructed was from the depot in the Town of Santa Cruz to the connection with the Southern Pacific Railroad at Pajaro Station, twenty-one miles 362-1000 of a mile. Of this distance one mile and two hundred and twenty feet was east of the eastern boundary of Santa Cruz County, and in the County of Monterey.

9. The entire line of the proposed road, from the point of connection with the S. P. Railroad to "New Year's Ranch," upon the western boundary of Santa Cruz County, has been surveyed and mapped, and is a distance of 39 695-1000 miles as surveyed. No work has been done of any other kind than to make such survey from the Town of Santa Cruz to the western terminus of said road. The surveyed line of said road is 19 miles 279-1000 of one mile.

The construction of this western portion of the road is practicable, and the same can be constructed at a length not exceeding twenty miles, and twenty miles will be required for said road. No contract has been made by the Board of Supervisors of Santa Cruz County, for the construction of the portion of said road surveyed west of the Town of Santa Cruz, nor has any work whatever been expended upon such portion of the road, other than making such survey.

10. The entire length of said road as completed, from the Town of Santa Cruz to the point of junction with the Southern Pacific Railroad, is 21 362–1000 miles. This section of the road was made three fourths ($\frac{3}{4}$) of a mile longer by the change of the route through the Town of Watsonville, than had it been completed upon the route as originally surveyed.

11. The road in question, between the points when the same was constructed, would have been fully completed and in running order by the thirty-first of December, 1875, but for the injunctions restraining the delivery of the bonds, as heretofore set forth. Said road, as to material, construction, and equipment, was in all respects in conformity with the terms of said contract, and the Board of Supervisors has at no time objected to the same, upon any of the grounds last

suggested, or in any form or manner protested as to the character or position of said road, or the material employed therein.

12. That upon the twenty-third day of February, 1874, the first section of said road was fully completed and in working order, to wit, five miles of the same east from the west bank of the San Lorenzo River, and said section was then, by said Board, examined, approved, and accepted, and the bonds of said county for the sum of thirty thousand dollars, or six thousand dollars per mile, for said section were then delivered to said plaintiff.

That thereafter, upon the first day of March, 1876, fourteen additional miles of said road were examined, approved, and accepted by said Board, and bonds for the same, to the amount of eighty-four thousand dollars, or six thousand dollars per mile, were then delivered to said plaintiff, making in all one hundred and fourteen thousand dollars in bonds so delivered, and nineteen miles of road so accepted. That after the first day of March, 1876, the plaintiff changed the line of its road to pass through the Town of Watsonville, the plaintiff completed said road to its junction with the Southern Pacific Railroad, and thereafter served due notice of such completion upon the Board of Supervisors, and demanded that they issue the county bonds, at the rate of six thousand dollars per mile, for such road so completed. But said Board then did and ever since have failed and refused to issue any other bonds to plaintiff, than the one hundred and fourteen thousand dollars heretofore mentioned.

13. That the whole length of road constructed from the Town of Santa Cruz to the Southern Pacific Railroad, deducting therefrom the increased length caused by passing through the Town of Watsonville, is twenty miles and three thousand two hundred and thirty-one feet.

14. That the compensation to which plaintiff is entitled from the County of Santa Cruz, under the several Acts of the Legislature, and the contracts heretofore referred to, for the road so constructed, is to bear such a proportion to the entire aid voted ($240,000) as the amount of road constructed (20 miles, 3,231 feet) bears to the entire length of the road (40 miles, 3,231 feet). The Court found as conclusion of law that the entire amount so payable is one hundred and twenty-

one thousand eight hundred and sixty-two dollars. That the entire amount paid is one hundred and fourteen thousand dollars. That the plaintiff is entitled to receive from the defendant bonds in accordance with said contract, to the amount of seven thousand eight hundred and sixty-two dollars ($7,862); and ordered that a writ of mandate issue accordingly.

*J. H. Logan, W. D. Storey*, and *J. H. Skirm*, for Appellant.

*Charles B. Younger* and *Taylor & Haight*, for Respondent.

The COURT:

We are satisfied, from the record, that the conditions precedent upon which the respondent was entitled to have the bonds issued to it, had all been performed by it, before the commencement of this proceeding, and therefore that the judgment appealed from should be affirmed. (*Nevada Bank* v. *Steinmetz*, 10 P. C. L. J. 459.)

Judgment affirmed.

McKEE, MYRICK, and THORNTON, JJ., dissented.